THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>RYAN FELTON | Criminal Action<br><br>No. 1:20-CR-0347-JPB-JSA |

## UNITED STATES' CONSOLIDATED MOTIONS IN LIMINE

The United States of America, by Ryan K. Buchanan, United States Attorney for the Northern District of Georgia, Nathan P. Kitchens and Sekret Sneed, Assistant United States Attorneys, hereby files these Consolidated Motions in Limine.

By this motion, the United States seeks a pretrial determination on the admission of certain business records pursuant to the Federal Rules of Evidence. Additionally, the United States moves to preclude Felton from presenting inadmissible and irrelevant evidence regarding: (1) the penalties associated with the charged offenses; (2) his general good character and specific instances of good conduct; (3) the United States' charging decisions; and (4) issues that could promote jury nullification. The United States also moves to preclude Felton from offering self-serving hearsay statements and from cross-examining or seeking to impeach a witness with an investigative report that the witness has not signed or otherwise adopted.

**Background**

On September 9, 2020, a grand jury sitting in this District returned an indictment charging defendant Ryan Felton with sixteen counts of wire fraud, ten counts of money laundering, and two counts of securities fraud. (Doc. 1). On November 8, 2021, the grand jury returned a superseding indictment with the same counts. (Doc. 26). On February 9, 2022, the Court issued an order setting trial for July 11, 2022 and requiring that motions in limine be filed by June 10, 2022. (Doc. 33).

**Discussion**

I.  **Motion in Limine To Admit Certain Business Records Pursuant to Federal Rules of Evidence 902(11) and 803(6)**

Federal Rule of Evidence 803(6) allows for the admission of business records "if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business to make the . . . record." Federal Rule of Evidence 902(11) permits a party to authenticate business records with a written declaration of a records custodian or other qualified person, as long as the party provides notice of its intention to the adverse party and makes the record and declaration available for inspection sufficiently in advance of their offer into evidence.

The Government anticipates introducing as evidence in this case third-party business records, including financial account records, social media records, and retail records, along with their corresponding declarations from records custodians, which have been produced in discovery to the Defendants. The Government intends to request that Defendants, through their counsel, stipulate

2

to the authenticity of such business records. To the extent that Defendants do not so stipulate, the Government respectfully requests that the Court make a pretrial determination that such documents are self-authenticating and admissible with business certifications alone, pursuant to Federal Rules of Evidence 803(6)(D) and 902(11), so that the Government will know in advance whether to make arrangements to call multiple record custodians as witnesses. *See, e.g.*, *United States v. Lezcano*, 296 F. App'x 800, 807-808 (11th Cir. 2008) (rejecting defendant's argument that records were improperly admitted where government complied with Rule 902(11)).

**II.     Motion in Limine To Preclude Evidence or Argument Concerning the Penalties Associated with the Charged Offenses, General Good Character, Specific Instances of Good Conduct, the Government's Charging Decisions, or Any Other Matter That Could Promote Jury Nullification**

The Constitution provides criminal defendants with the general right to present evidence and call witnesses in their own favor. *See United States v. Hurn*, 368 F.3d 1359, 1362 (11th Cir. 2004); *see also* U.S. CONST. amends. V, VI. However, such rights are not absolute. *See Hurn*, 368 F.3d at 1365-66. Indeed, it "is axiomatic that a defendant's right to present a full defense does not entitle him to place before the jury irrelevant or otherwise inadmissible evidence." *United States v. Anderson*, 872 F.2d 1508, 1519 (11th Cir. 1989). Accordingly, defendants are only constitutionally entitled to present evidence that is relevant to an element of the

charged offense or to an affirmative defense. *See Hurn*, 368 F.3d at 1365–66; *United States v. Masferrer*, 514 F.3d 1158, 1161 (11th Cir. 2008).

Under the Federal Rules of Evidence, evidence "is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." FED. R. EVID. 401; *see* FED. R. EVID. 402 ("Relevant evidence is admissible," while "[i]rrelevant evidence is not admissible"). Trial courts have "broad discretion to determine the relevance and admissibility of any given piece of evidence." *United States v. Merrill*, 513 F.3d 1293, 1301 (11th Cir. 2008).

### 1. Penalty Evidence

First, the United States requests that Felton be prohibited from attempting to introduce evidence or arguments about the potential penalties or collateral consequences associated with a conviction for the charged offenses.

It is well-settled that arguments or evidence regarding punishment are improper because the potential penalties faced by a defendant are irrelevant to the jury's determination of guilt or innocence. *See Shannon v. United States*, 512 U.S. 573, 579 (1994) ("[A] jury has no sentencing function, it should be admonished to 'reach its verdict without regard to what sentence might be imposed.'" (quoting *United States v. Rogers*, 422 U.S. 35, 40 (1975))); *United States v. Frank*, 956 F.2d 872, 879 (9th Cir. 1991) ("It has long been the law that it is inappropriate for a jury to consider or be informed of the consequences of their verdict."). Indeed, the Eleventh Circuit has unequivocally stated that the "question of punishment should never be considered by the jury in any way in deciding the case." *United States v. McDonald*, 935 F.2d 1212, 1222 (11th Cir. 1991); *accord* ELEVENTH CIRCUIT

PATTERN JURY INSTRUCTIONS (Criminal Cases), Basic Instruction No. 10.2 (2010) ("You must never consider punishment in any way to decide whether the Defendant is guilty. If you find the Defendant guilty, the punishment is for the Judge alone to decide.").

This analysis applies equally to the collateral penalties associated with a felony conviction—such as being prohibited from certain types of employment, losing the rights to possess firearms and vote, and experiencing any family or business-related hardships caused by a federal conviction. *See United States v. Muentes*, 316 F. App'x 921, 926 (11th Cir. 2009) ("A defendant is not entitled to an instruction informing the jury of the consequence of a guilt or innocence finding in terms of punishment."); *United States v. Thigpen*, 4 F.3d 1573, 1579 (11th Cir. 1993) ("We . . . hold that the general rule against informing jurors of the consequences of a verdict governs such cases."); *United States v. Del Rosario*, No. 12-CR-81, 2012 WL 2354245, at *1 (S.D.N.Y. June 14, 2012) (excluding evidence related to immigration consequences); *United States v. Johnson*, No. 08-CR-466, 2011 WL 809194, at *4 (N.D. Ill. Mar. 2, 2011) (precluding argument or evidence about the "hardship" defendants' families would face if the defendants were convicted).

And the rationale for excluding penalty evidence is plain—the penalties associated with a conviction are not probative of guilt or innocence. *See Rogers*, 422 U.S. at 40 ("[T]he jury had no sentencing function and should reach its verdict without regard to what sentence might be imposed."). Instead, evidence relating to the punishment and the collateral effects of a conviction serve only to compromise the verdict, confuse the jury, or invoke sympathy for the defendant. *See McDonald*, 935 F.2d at 1222; *see also Old Chief v. United States*, 519 U.S. 172, 180

(1997) ("'Unfair prejudice' . . . means an undue tendency to suggest decision on an improper basis, commonly . . . an emotional one." (quoting Advisory Committee's Notes on FED. R. EVID. 403)).

As a result, the United States moves to preclude Felton from arguing or introducing evidence regarding the potential penalties he faces if convicted, including: (a) the maximum penalties associated with the charged offenses; (b) that Felton could be sentenced to prison; (c) that Felton may face adverse employment consequences; (d) that Felton will no longer be able to vote or possess a firearm; and (e) that a conviction may cause his family hardship. *See Rogers*, 422 U.S. at 40.

### 2. Good Character Evidence

Second, the United States moves to exclude all evidence of Felton's general good character and evidence of specific instances of good conduct.

Under the Federal Rules of Evidence, a defendant may present character evidence via reputation or opinion testimony regarding lawfulness and often regarding truthfulness—and the prosecution can rebut the same. FED. R. EVID. 405(a); *United States v. Reed*, 700 F.2d 638, 645 (11th Cir. 1983); *see United States v. Hewitt*, 634 F.2d 277, 279 (5th Cir. 1981 (Unit A)) (lawfulness is a pertinent trait in all criminal prosecutions).[1]  Conversely, "[e]vidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion." FED. R. EVID. 404(a). Accordingly, when character is not an essential element of the offense, character evidence may only

---

[1] In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent decisions of the Fifth Circuit, including Unit A panel decisions of that circuit, handed down prior to October 1, 1981.

be presented through "testimony as to reputation or by testimony in the form of an opinion." FED. R. EVID. 405(a); *accord United States v. Solomon*, 686 F.2d 863, 874 (11th Cir. 1982).

As it follows, a defendant may not present evidence that s/he possesses a generally good character. *See United States v. Camejo*, 929 F.2d 610, 613 (11th Cir. 1991) (court properly excluded proffered testimony "to portray [defendant as having] a good character"); *cf. Hewitt*, 634 F.2d at 280 (prevailing view is that Rule 404(a) precludes a defendant from offering reputation or opinion testimony regarding his "general good character").

Likewise, a defendant may not offer evidence of specific instances of good conduct or the absence of bad conduct. *See United States v. Ellisor*, 522 F.3d 1255, 1270–71 (11th Cir. 2008) ("[S]pecific acts of good character were inadmissible under [the] Rules"); *see also United States v. Marrero*, 904 F.2d 251, 259–60 (5th Cir. 1990) (court properly excluded evidence that defendant did not overcharge in certain instances because such evidence is improper under Rule 405 as specific acts of good character); *United States v. Barry*, 814 F.2d 1400, 1403 (9th Cir. 1987) ("[T]estimony as to the lack of prior bad acts is, in essence, testimony as to multiple instances of good conduct, and its admission would appear to violate a strict reading of Rule 405(a)."); *Government of Virgin Islands v. Grant*, 775 F.2d 508, 512 (3d Cir. 1985) ("[T]estimony that one has never been arrested is especially weak character evidence; a clever criminal, after all, may never be caught.").

Similarly, it is well-established that "[e]vidence of good conduct is not admissible to negate criminal intent." *Camejo*, 929 F.2d at 613 (citing *Michelson v. United States*, 335 U.S. 469, 477 (1948)) (drug trafficking defendant's refusal to work

in one narcotics business was irrelevant and inadmissible prior "good act"). The Eleventh Circuit has consistently affirmed the exclusion of defendants' prior good conduct evidence when offered to support a defense of lack of criminal intent. *See, e.g.*, *Ellisor*, 522 F.3d at 1270 (concluding that purported legitimate business activities were inadmissible in a fraud case); *United States v. Russell*, 703 F.2d 1243, 1249 (11th Cir. 1983) ("Evidence of noncriminal conduct to negate the inference of criminal conduct is generally irrelevant." (quoting *United States v. Grimm*, 568 F.2d 1136, 1138 (5th Cir. 1978))); *see also United States v. Marley*, 621 F. App'x 936, 941 (11th Cir. 2015) (defendant's attempt to justify his firm's fraudulent invoices by asserting that he had performed unbilled work was inadmissible to negate his fraudulent intent); *United States v. Ly*, 543 F. App'x 944, 946 (11th Cir. 2013) (evidence that doctor properly treated certain patients inadmissible to demonstrate his state of mind in improperly dispensing controlled substances).

Judged by these principles, Felton should not be permitted to introduce evidence that he possessed a generally "good" character, such as that he is:

a. A good husband/father and provides for his family. *See United States v. Santana-Camacho*, 931 F.2d 966, 967 (1st Cir. 1991) (excluding evidence that defendant was a good family man because it was not a trait relevant to the offense); *United States v. Paccione*, 949 F.2d 1183, 1201 (2d Cir. 1991) (court properly excluded evidence that defendant had devoted his life to caring for a son with cerebral palsy); *cf. Solomon*, 686 F.2d at 873–74 (properly excluding evidence of defendant's military service and number of children as an improper attempt to interject specific instances of conduct);

    b. Religious. *See United States v. Bernard*, 299 F.3d 467, 476 (5th Cir. 2002) (approving court's sentencing instruction that jurors should not "consider the religious views of the defendants"); *United States v. Goxcon Chagal*, 885 F. Supp. 2d 1118, 1158–59 (D.N.M. 2012) ("[R]ule 610[ ] is . . . designed to avoid a jury drawing improper inferences about a witness' character or credibility in light of the witness' religious beliefs. . . .");

    c. A community participant. *United States v. Nazzaro*, 889 F.2d 1158, 1168 (1st Cir. 1989) (evidence of "bravery, attention to duty, perhaps community spirit—were hardly 'pertinent' to the [charged] crimes"); *United States v. Morison*, 622 F. Supp. 1009, 1010–11 (D. Md. 1985) ("patriotism" not relevant trait to charge); and

    d. A kind, moral, or hard-working person. *See Santana-Camacho*, 931 F.2d at 967 (excluding evidence that defendant was a kind man).

Similarly, Felton should not be permitted to put on evidence of specific acts of good conduct—such as incidents: (a) of public service, charitable work, or church work/activities; (b) of honesty; (c) of the lack of prior bad acts; or (d) of any other specific instances of "good" conduct. *Ellisor*, 522 F.3d at 1270; *see, e.g.*, *Camejo*, 929 F.2d at 613 ("[The] proffered testimony was merely an attempt to portray [the defendant] as a good character through the use of prior 'good acts.'"); *United States v. McMahan*, 394 F. App'x 453, 463 (10th Cir. 2010) ("[A]lthough [defendant] was entitled to present character evidence, she could not do so by offering evidence of specific instances of his conduct."); *United States v. Washington*, 106 F.3d 983, 999–1000 (D.C. Cir. 1997) (defendant police officer's commendations were properly excluded because they were neither "pertinent" nor probative of an essential

element); *United States v. Scarpa*, 897 F.2d 63, 70 (2d Cir. 1990) ("A defendant may not seek to establish his innocence, however, through proof of the absence of criminal acts on specific occasions."); *see also* FED. R. EVID. 404(a); *cf. Barry*, 814 F.2d at 1404 ("letters of commendation were hearsay").

### 3. Charging Decisions

Third, the United States moves to exclude all evidence and arguments regarding its charging decisions.

The Eleventh Circuit has recognized that the "Attorney General and United States Attorneys retain broad discretion to enforce the Nation's criminal laws." *United States v. Cespedes*, 151 F.3d 1329, 1332 (11th Cir 1998) (internal quotations omitted); *accord United States v. Armstrong*, 517 U.S. 456, 464 (1996). United States Attorneys "have this latitude because they are designated by statute as the President's delegates to help him discharge his constitutional responsibility to take care that the laws be faithfully executed." *Cespedes*, 151 F.3d at 1332 (internal quotations omitted); *accord* U.S. CONST. art. II, § 3; *see* 28 U.S.C. §§ 516, 547.

As a general matter, "so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion." *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978); *accord Cespedes*, 151 F.3d at 1332; *see also United States v. Batchelder*, 442 U.S. 114, 124-25 (1979) ("Selectivity in the enforcement of criminal laws is, of course, subject to constitutional constraints.").

The claim that others "could have been charged but were not" is not a factual defense that bears upon whether the defendant is guilty of the crimes charged by

the grand jury. *United States v. Smith*, 231 F.3d 800, 807 (11th Cir. 2000). As it follows, evidence that some other individual is currently uncharged has no probative value to the issues at trial and serves only to confuse or mislead the jury. *See* FED R. EVID. 402 and 403.

Judged under these legal principles, Felton should be precluded from introducing evidence or making arguments regarding charging decisions made by the United States. To the extent that Felton seeks to present evidence or arguments that other individuals have not been charged for related conduct and/or that it is unfair that Felton has been charged, while other individuals involved in related criminal conduct remain uncharged, such evidence is irrelevant and only serves to divert the jury's attention to matters unrelated to Felton's guilt or innocence.

### 4. Jury Nullification

Fourth, the United States moves to preclude Felton from attempting to introduce evidence or make arguments designed to induce jury nullification.

In line with the relevancy principles set forth above, federal courts have universally excluded evidence and arguments that encourage jury nullification. *See United States v. Trujillo*, 714 F.2d 102, 105 (11th Cir. 1983) ("[Defendant's] jury nullification argument would have encouraged the jurors to ignore the court's instruction and apply the law at their caprice. While we recognize that a jury may render a verdict at odds with the evidence or the law, neither the court nor counsel should encourage jurors to violate their oath."); *United States v. Carr*, 424 F.3d 213, 220 (2d Cir. 2005) ("[C]ategorically reject[ing] the idea that, in a society committed to the rule of law, jury nullification is desirable or that courts may permit it to occur"); *United States v. Sepulveda*, 15 F.3d 1161, 1190 (2d Cir. 1993) ("[N]either the

11

court nor counsel should encourage jurors to exercise [nullification] power. . . . A trial judge, therefore, may block defense attorneys' attempts to serenade a jury with the siren song of nullification. . . ."); *United States v. Demarais*, 938 F.2d 347, 350 (1st Cir. 1991) ("improper to urge the jury to nullify applicable law"); *United States v. Drefke*, 707 F.2d 978, 982 (8th Cir. 1983) ("[F]ederal courts have uniformly recognized the right and duty of the judge to instruct the jury on the law and the jury's obligation to apply the law to the facts, and that nullification instructions should not be allowed.").

In that regard, the Eleventh Circuit stated that:

> A jury has no more "*right*" to find a "guilty" defendant "not guilty" than it has to find a "not guilty" defendant "guilty," and the fact that the former cannot be corrected by a court, while the latter can be, does not create a right out of the power to misapply the law.  Such verdicts are lawless, a denial of due process and constitute an exercise of erroneously seized power.

*United States v. Funches*, 135 F.3d 1405, 1409 (11th Cir. 1998) (citing *United States v. Washington,* 705 F.2d 489, 494 (D.C. Cir. 1983)); *see* ELEVENTH CIRCUIT PATTERN JURY INSTRUCTIONS (Criminal Cases), Basic Instruction No. 2.1 (2010) ("You must follow the law as I explain it—even if you do not agree with the law.").

As it follows, a "defense counsel may not argue jury nullification during closing argument."  *Trujillo*, 714 F.2d at 105-06; *see also Muentes*, 316 F. App'x at 926 ("[D]efense counsel may not raise arguments that would encourage jury nullification."); *United States v. Hall*, 188 F. App'x 922, 925 (11th Cir. 2006) ("[A] criminal defendant is not entitled to either an instruction or an argument for jury nullification."); *United States v. Bruce*, 109 F.3d 323, 327 (7th Cir. 1997) (holding that

12

jury nullification is not to be sanctioned by instructions, but is to be viewed as an aberration under our system).

Based on these principles, the United States moves this Court to preclude Felton from attempting to introduce evidence or to make arguments designed to encourage jury nullification. By way of example, the United States is moving to preclude evidence or arguments related to: (1) Felton's financial status or to any financial hardship; (2) Felton and his families' health or medical conditions; (3) sympathy; (4) Felton's religious beliefs and habits; (5) charity/church/community service work completed by Felton; (6) Felton's family status; and (7) any past hardships suffered by Felton. *See Funches*, 135 F. 3d at 1409 (concluding no error when court denies admission of evidence that would support nullification, "even if the evidence might have encouraged the jury to disregard the law and to acquit the defendant"); *United States v. Perez*, 459 F. App'x 191, 198 (3d. Cir. 2012) (family and work life not relevant and "pose[d] an improper risk of jury nullification"); *United States v. Copeland*, 291 F. App'x 94, 97 (9th Cir. 2008) (evidence excluded because of "possible prejudice to the government of jury nullification based on sympathy"); *Wallace v. Davis*, 362 F.3d 914, 921 n.2 (7th Cir. 2004) (Williams, J., concurring) ("[M]itigation strategies which seek the 'equivalent of jury nullification' on the basis of religious beliefs are unreasonable."); *see also Goxcon Chagal*, 885 F. Supp. 2d at 1158–59; *United States v. Rainone*, No. 09-CR-206, 2013 WL 389004, at *1 (N.D. Ill. Jan. 13, 2013) (excluding evidence of defendant's age, health, or family "that is intended to invoke sympathy"); *United States v. Rabinowitz*, 2012 WL 3150959, at *2 (S.D. Ohio Aug. 2, 2012) (noting that "Defendant cannot introduce his purported health issues in any attempt to obtain

13

jury nullification" and requiring defendant to make proffer without jury present before seeking to introduce health issues). Such evidence is not relevant to the issues at trial, could promote jury nullification, and thus should be excluded.

### III. Motion in Limine to Preclude Introduction of Self-Serving Hearsay.

The United States anticipates that it will seek to introduce at trial various statements made by Felton, including but not limited to statements that Felton made to the investigating agents and in sworn testimony during a Securities and Exchange Commission interview. Felton should be precluded from introducing self-serving hearsay at trial.

Hearsay is "a statement that: (1) the declarant does not make while testifying at the current trial . . . and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." FED. R. EVID. 801(c). Rule 802 generally prohibits the admission of hearsay. But not all out-of-court statements qualify as hearsay. Under Fed. R. Evid. 801(d)(2), for instance, admissions by a party-opponent (offered against the party) are excluded from the definition of hearsay because the adversarial process allows the party-defendant to rebut his own admissions by testifying at trial. See FED. R. EVID. 801(d) and Advisory Committee's Note to Subdivision (d)(2)(A).

However, Rule 801(d)(2)(A) makes clear that an admission by a party-opponent must be offered *against* the party. FED. R. EVID. 801(d)(2)(A). The Eleventh Circuit has confirmed that Rule 801(d)(2) does not extend to a party's attempt to introduce his own statements through the testimony of other witnesses. *United States v. Willis*, 759 F.2d 1486 (11th Cir. 1985). In *Willis*, the defendant sought to elicit exculpatory statements made at the time of his arrest through cross-examination

14

of a law enforcement witness who testified on behalf of the government. *Id.* at 1501. The Eleventh Circuit upheld the district court's ruling to exclude such evidence, holding that the hearsay rule expressly forbids a defendant from seeking to place his own self-serving remarks before a jury without subjecting himself to cross-examination. *Id.*

Since *Willis*, the Eleventh Circuit has repeatedly rejected defendants' efforts to offer their own self-serving, exculpatory statements through the testimony of other witnesses. *See, e.g., United States v. Cunningham*, 194 F.3d 1186, 1199 (11th Cir. 1999); *United States v. Ramirez-Perez*, 166 F.3d 1106, 1112-14 (11th Cir. 1999). Similarly, because such self-serving statements lack the requisite indicia of reliability and trustworthiness required to overcome the hearsay rule, district courts have also routinely rejected admission of these statements under other exceptions to the hearsay rule, such as to explain a defendant's then-existing state of mind under Fed. R. Evid. 803(3) (*Cunningham*, 194 F.3d 1186, 1199 (11th Cir. 1999)), or under Fed. R. Evid. 807's residual exception to the hearsay rule (*United States v. McCraney*, 612 F.3d 1057, 1061-62 (8th Cir. 2010) (affirming district court's exclusion of statement that lacked the necessary indicia of trustworthiness)).

For all of these reasons, the United States moves that the Court preclude Felton from eliciting self-serving hearsay statements during 1) cross-examination of the United States' witnesses, 2) on direct examination through his own witnesses, or 3) making any statements in argument during opening statements or otherwise

15

referencing self-serving statements unless and until properly introduced through his testimony while subject to cross-examination.

## IV. Motion in Limine to Preclude Impeachment via Investigative Reports.

The United States moves to preclude Felton from cross-examining or seeking to impeach a witness with an investigative report that the witness has not signed or otherwise adopted.[2]

Under the Federal Rules of Evidence, a witness may only be cross-examined and, where appropriate, impeached with his or her own prior statements. *See* FED. R. EVID. 613. Indeed, the Supreme Court has long recognized that it would be "grossly unfair to allow the defense to use statements to impeach a witness which could not fairly be said to be the witness' own rather than the product of the investigator's selections, interpretations, and interpolations." *Palermo v. United States*, 360 U.S. 343, 350 (1959). In preparing investigative summaries, law enforcement officers necessarily exercise discretion in drafting reports. *See United States v. Brika*, 416 F.3d 514, 529 (6th Cir. 2005) (recognizing that FBI 302s "have been deemed inadmissible for impeaching witnesses on cross-examination"), *abrogated on other grounds*, *United States v. Booker*, 543 U.S. 222 (2005); *United States v. Almonte*, 956 F.2d 27, 29 (2d Cir. 1992) ("The problem, in essence, is one of relevancy. If a third party's notes reflect only that note-taker's summary characterization of a witness's prior statement, then the notes are irrelevant as an impeaching prior inconsistent statement, and thus inadmissible.").

---

[2] The United States' motion does not seek to proscribe or limit the use of investigative reports to refresh a witness's recollection.

16

Accordingly, investigative reports are not the "statements" of the interviewed individuals.[3] *See United States v. Jordan*, 316 F.3d 1215, 1252 (11th Cir. 2003) ("[FBI 302s] are not Jencks Act statements of the witness unless they are substantially verbatim and were contemporaneously recorded, or were signed or otherwise ratified by the witness."). As a result, courts have routinely held that these types of law enforcement reports cannot be used to cross-examine or impeach interviewed parties if they are called as witnesses. *See, e.g., United States v. Saget*, 991 F.2d 702, 710 (11th Cir. 1993) ("[A] witness may not be impeached with a third party's characterization or interpretation of a prior oral statement unless the witness has subscribed to or otherwise adopted the statement as his own."); *United States v. Almonte*, 956 F.2d 27, 29 (2d Cir. 1992) (same); *United States v. Leonardi*, 623 F.2d 746, 757 (2d Cir. 1980) (affirming refusal to admit FBI interview report as a prior consistent statement because it was "not attributable to" the witness); *United States v. Shannahan*, 605 F.2d 539, 542 (10th Cir. 1979) (holding that defense could not use FBI reports to cross-examine witnesses because "reports did not come within the rule authorizing the use of prior statements"); *United States v. Hill*, 526

---

[3] Consequently, investigative reports are also not discoverable under the Jencks Act, although the United States has already and will continue to produce such reports. *See United States v. Jordan*, 316 F.3d 1215, 1255 (11th Cir. 2003); *United States v. Price*, 542 F.3d 617, 621 (8th Cir. 2008) (holding that, absent evidence of adoption, FBI 302s "are not discoverable under . . . the Jencks Act"); *United States v. Donato*, 99 F.3d 426, 433 (D.C. Cir. 1996) ("[T]he agent's notes and 302 report . . . are not covered by the Jencks Act."); *United States v. Roseboro*, 87 F.3d 642, 646 (4th Cir. 1996) (affirming ruling that "FBI 302 Report was not a Jencks Act statement"); *United States v. Williams*, 998 F.2d 258, 269 (5th Cir. 1993) ("We hold that the FBI Forms 302 were not discoverable statements under the Jencks Act."); *United States v. Morris*, 957 F.2d 1391, 1402 (7th Cir. 1992) (holding that FBI reports "are not statements producible under the Jencks Act because they were neither signed nor adopted . . . and further because they are not a verbatim recital . . . but rather only an agent's summary"); *United States v. Foley*, 871 F.2d 235, 239 (1st Cir. 1989) ("302s are not substantially verbatim recitals . . . and recorded contemporaneously.").

F.2d 1019, 1026 (10th Cir. 1975) (same); *United States v. Rizza*, 2:14-CR-002-SPC, 2014 WL 3747624, at *2 (M.D. Fla. July 29, 2014) ("Defendants are precluded from depicting such 302s and summary reports as witness statements during the trial.").

As a result, the United States seeks to preclude Felton: (a) from cross-examining or seeking to impeach witnesses with non-verbatim reports that have not been signed or adopted by the witness; and (b) from quoting, publishing, or suggesting to the jury that the contents of an investigative report is a statement of the witness.

## Conclusion

WHEREFORE, the United States requests that the Court grant its Consolidated Motions in Limine.

Respectfully submitted,

RYAN K. BUCHANAN
*United States Attorney*


/s/SEKRET T. SNEED
*Assistant United States Attorney*
Georgia Bar No. 252939


/s/NATHAN P. KITCHENS
*Assistant United States Attorney*
Georgia Bar No. 263930


600 U.S. Courthouse ▪ 75 Ted Turner Drive, SW
Atlanta, GA 30303 ▪ 404-581-6000

## CERTIFICATE OF SERVICE

The United States Attorney's Office served this document today by filing it using the Court's CM/ECF system, which automatically notifies the parties and counsel of record.

Dated:   June 10, 2022.

/S/ NATHAN P. KITCHENS
*Assistant United States Attorney*
