IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA

*v.*

RYAN FELTON

Criminal Action No.

1:20-cr-00347-JPB

## Government's Sentencing Memorandum

The United States of America, by Ryan K. Buchanan, United States Attorney, and Sekret T. Sneed and Nathan P. Kitchens, Assistant United States Attorneys, for the Northern District of Georgia, files this Sentencing Memorandum in preparation for sentencing on November 22, 2022, at 1:00 p.m., in the above-captioned matter.  The Government will recommend that the Court impose a sentence in the middle of the applicable custody guideline range.

### Introduction

On September 9, 2020, a Grand Jury, sitting in the Northern District of Georgia, indicted the defendant, Ryan Felton, for multiple counts of wire fraud, money laundering and securities fraud related to two different cryptocurrency investment fraud schemes.   The first scheme involved a promised-but-never-developed streaming entertainment platform that was to be called FLiK; and, the second scheme involved a promised-but-never-fully-operational cryptocurrency exchange called CoinSpark.

A trial by jury began on July 11, 2022.  On the morning of the fourth day of trial—*after* the Government expressed that it would be calling the last two

witnesses in its case-in-chief, the defendant, Ryan Felton, pleaded guilty to the remaining counts of the Criminal Indictment.[1] Specifically, the Defendant pleaded guilty to nine counts of wire fraud, eight counts of money laundering and one count of securities fraud related to the FLiK scheme and to four counts of wire fraud, two counts of money laundering and one count of securities fraud as to the CoinSpark scheme.

According to the Final Presentence Investigation Report ("PSR"), the Defendant faces a Custody Guideline Range of 78 to 97 based on the following:

**Wire Fraud and Securities Fraud**

| 2B1.1(a)(1) | Base Offense Level | 7 |
|---|---|---|
| 2B1.1(b)(1)(I) | Loss Amount more than $1,500,000 but less than $3,500,000 | +16 |
| 2B1.1(b)(2)(A)(ii) | Mass marketing | +2 |
| 2B2.1(b)(10)(C) | Sophisticated means | +2 |
| **TOTAL** | | 27 |

**Money Laundering**

| 2S1.1 | Base Offense Level | 27 |
|---|---|---|
| 2S1.1(b)(2)(A) | Defendant was convicted under 18 U.S.C. § 1957 | +1 |
| **TOTAL** | | 28 |

---

[1] The Government dismissed Counts Four through Five and Twelve of the Criminal Indictment during the trial.

**The Government's Positions as to the Defendant's Unresolved Objections**

Unresolved objections that impact the Defendant's guidelines or financial obligations pertain to PSR ¶¶ 139 (restitution), 145 (sophisticated means enhancement) and 158 (acceptance of responsibility).

### A. The Amount of Restitution (Paragraph 139)

Upon conviction of an offense "in which an identifiable victim or victims has suffered a . . . pecuniary loss," the Mandatory Victim Restitution Act ("MVRA") requires that the court order "that the defendant make restitution to the victim of the offense . . .." 18 U.S.C. § 3663A(a)(1) & (c)(1)(B). A "victim" under the MVRA is any "person directly and proximately harmed as a result of the commission of an offense." 18 U.S.C. § 3663A(a)(2). The phrase "directly and proximately" is not an overly exacting standard. It requires but-for causation and only that "'the causal connection between the conduct and the loss is not too attenuated (either factually or temporally).'" *United States v. Robertson*, 493 F.3d 1322, 1334 (11th Cir. 2007) (citation omitted).

As for the appropriate amount of restitution, 18 U.S.C. § 3664 requires the district court to "order restitution to each victim in the full amount of each victim's losses." 18 U.S.C. § 3664(f)(1)(A). The "restitution award 'must be based on the amount of loss *actually* caused by the defendant's conduct.'" *United States v. Huff*, 609 F.3d 1240, 1247 (11th Cir. 2010) (citation omitted). The goal of restitution is to make the victim whole. *See id.* at 1249.

Here, there can be no real dispute that the investors in the FLiK and CoinSpark schemes are victims for purposes of the MVRA. The PSR calculates that the

Defendant owes $2,499,398.61 million in restitution, which is based on the total amount of loss attributed to both schemes.

Restitution is "based on the amount of loss actually caused by the defendant's conduct," *United States v. Ruan*, 966 F.3d 1101, 1174 (11th Cir. 2020); however, the Government has the burden to prove a "reasonable estimate" of the loss to the victim by a preponderance of the evidence. *United States v. Bane*, 720 F.3d 818, 828-829 n. 10 (11th Cir. 2013). Here, given that the FLiK scheme and CoinSpark scheme involved cryptocurrency, which is anonymous by nature, the Government is unable to prove by a preponderance of the evidence restitution as to each victim who invested in the FLiK and CoinSpark schemes.

The MVRA, however, does not require the Government to make such showing as to *each* victim of a scheme where "determining complex issues of fact related to the cause or amount of the victim's losses would complicate or prolong the sentencing process to a degree that the need to provide restitution to any victim is outweighed by the burden on the sentencing process." 18 U.S.C. § 3663A(c)(3)(B). Thus, while the Government is unable to identify each and every individual who invested in the schemes, the Government undertook to solicit contact from investor-victims through notices on the FBI's official website and social media accounts since approximately September 2022 and through victim-witnesses who testified at trial.

Based on information that the Government has received as of the date of the filing of this sentencing memorandum (and that the Government will provide to defense counsel) from investor-victims, the Government is able to recommend that

the Court order restitution in the total amount of $659,476.44 in the amounts and to the individuals below.[2] To the extent that the Government receives additional information from investor-victims prior to sentencing, the Government will seek to adjust the restitution amount accordingly.

| Victim Name | Amount of Loss |
|---|---|
| C.M. | $3,207.58 |
| D.B. | $34,228.43 |
| D.D. | $81,881.94 |
| G.B. | $8,328 |
| J.M. | $459,091.20 |
| K.F. | $1,162.98 |
| L.N. | $13,283 |
| M.Z. | $20,100 |
| N.H. | $36,956.31 |
| R.H. | $1,237 |
| **TOTAL** | **$659,476.44** |

---

[2] The Government will provide the victim addresses to the Court via email.

**B. The Court Should Overrule the Defendant's Objection to the**

**Application of the Sophisticated Means Enhancement, (Paragraph 145).**

The PSR adds two levels to the Base Offense Level under Section 2B1.1(b)(10)(C) on the grounds that the offense "involved sophisticated means and the defendant intentionally engaged in or caused the conduct constituting sophisticated means . . .." The PSR notes that the defendant made false statements to investors and prospective investors involving the FLiK token and Spark coin in order to pump the price of each digital asset so that he could dump his own tokens and coins on the market at an inflated price. The Defendant objects to this enhancement, which the Court should overrule.

Application Note 9(B) to Section 2B1.1(b)(10)(C) defines "sophisticated means" as "especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense." Application Note 9(B) sets forth an example of sophisticated means as "hiding assets or transaction, or both, through the use of fictitious entities, corporate shells, or offshore financial accounts."[3] The Eleventh Circuit has noted that "[e]ach action by a defendant need not be sophisticated in order to support this enhancement. It is sufficient if the totality of the scheme was sophisticated." *United States v. Barrington*, 648 F.3d 1178, 1199 (11th Cir. 2011).

---

[3] The Eleventh Circuit has noted that the examples provided in the Commentary are not exhaustive. *See United States v. Clark*, 562 F.3d 1158, 1165 (11th Cir. 2009) ("[A] defendant need not use offshore bank accounts or transactions through fictitious entities in order for the enhancement to apply").

6

The PSR applies the enhancement on the grounds that the Defendant engaged in a complex pump-and-dump scheme in order to support his lavish lifestyle, including by making false statements to the public about the use of their investments, among other things.  (PSR, ¶ 145.)

In addition, as demonstrated at trial, the Defendant used sophisticated means to execute and conceal the schemes.  Specifically, as to the FLiK scheme, the Defendant used his extensive knowledge of trading digital assets on cryptocurrency trading platforms to conceal the fact that he held a large amount of FLiK tokens.  Only after he had made false statements regarding the development of the FLiK platform, FLiK's intention to "burn" unsold tokens, the participation in FLiK of notable entertainers, purported large dollar investors and his supposed contacts with popular film studios and distributors, among other things, that investors relied on, did he then sell his tokens under an anonymous account on a cryptocurrency platform to ultimately reap all the proceeds and transfer those proceeds to a traditional bank account.  Thus, the Defendant's scheme further involved several accounts—either trading accounts or bank accounts--that all appear to have been chosen to facilitate the concealment of the Defendant's identity from investors and prospective investors.

The same is true in the Defendant's execution and concealment of the CoinSpark scheme.  As shown at trial, the Defendant involved other individuals to unknowingly run his scheme while the Defendant actively hid his involvement through anonymous articles and email accounts, even going so far as to deny his involvement when investors became suspicious through anonymous posts and

articles and creating outlandish excuses about cryptocurrency platform safety to avoid revealing his identity.  Moreover, the Defendant took advantage of his sophisticated knowledge regarding the creation of companies outside the United States to tap into the lucrative foreign market for cryptocurrency investment.

The Defendant's actions, therefore, were complex and intricate in executing and concealing the FLiK and CoinSpark schemes.  *See United States v. Altomare*, 673 Fed. Appx. 956 (11th Cir. 2016) (affirming application of sophisticated means enhancement where the defendant, among other things, attempted "to trick the public into buying stock at an inflated price" and "lied" about his interest in the company); *United States v. Muzio*, No. 09-20327-CR-KING/BANDSTRA, 2010 U.S. Dist. LEXIS 64781 (Fla. S.D. June 15, 2010) (finding the sophisticated means enhancement applied where the defendant "concealed his identity as both and seller in numerous 'wash trades' from both the public and the brokerage firms involved in these trades" and "created false and misleading press releases" regarding his company).

## B. The Court Should Overrule the Defendant's Objection to the Lack of a Reduction for Acceptance of Responsibility, (Paragraph 158).

The PSR did not decrease the Adjusted Offense Level at all for acceptance of responsibility, finding that such a reduction was unwarranted because the "the defendant put the Government to its burden of proof at trial by denying the essential factual elements of guilt for three days of a Jury trial." (PSR, ¶ 158.)  The Court should overrule the Defendant's objection regarding the lack of a reduction for acceptance of responsibility.

Section 3E1.1(a) allows a court to decrease an offense level by two levels "[i]f the defendant clearly demonstrates acceptance of responsibility for his offense . . .."  Application Note 1 sets forth a number of considerations that a court may consider to determine whether a defendant qualifies for the two-level reduction for acceptance of responsibility:

(A)   truthfully admitting the conduct comprising the offense(s) of conviction, and truthfully admitting or not falsely denying any additional relevant conduct . . . ;

(B)   voluntary termination or withdrawal from criminal conduct or associations;

(C)   voluntary payment of restitution prior to adjudication of guilt;

(D)   voluntary surrender to authorities promptly after commission of the offense;

(E)   voluntary assistance to authorities in the recovery of the fruits and instrumentalities of the offense;

(F)   voluntary resignation from the office or position held during the commission of the offense;

(G)   post-offense rehabilitative efforts (*e.g.*, counseling or drug treatment); and

(H)   the timeliness of the defendant's conduct in manifesting the acceptance of responsibility.

Application Note 3 to Section 3E1.1 also makes clear: "A defendant who enters a guilty plea is not entitled to an adjustment under this section as a matter of right."

9

Application Note 2 to Section 3E1.1 clarifies that this section should not "apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt . . .."  However, the commentary notes that a defendant's exercise of his "constitution right to trial" does not preclude the application of this adjustment "[i]n rare situations . . ., for example, where a defendant goes to trial to assert and preserve issues that do not relate to factual guilt (*e.g.,* to make a constitutional challenge to a statute or a challenge to the applicability of a statute to his conduct)."  USSG § 3E1.1, App. Note 3.

The Defendant cannot show that he accepted responsibility.  As the PSR notes, the Defendant put the Government to its burden of proof of trial for over three days.  Moreover, the Defendant cannot show that any of the factors identified in Section 3E1.1, Application Note 1 apply to warrant a reduction for acceptance of responsibility. The Defendant also cannot show that he accepted responsibility before trial through any "pre-trial statements and conduct."  USSG § 3E1.1, App. Note 3.

Ultimately, it is the defendant's burden to "clearly demonstrat[e] acceptance of responsibility and [the defendant] must present more than just a guilty plea." *United States v. Sawyer*, 180 F.3d 1319, 1323 (11th Cir. 1999).  And, there is nothing in the record or the Defendant's conduct that indicate the Defendant will be able to make this showing.  *See United States v. Scott*, 798 Fed. Appx. 391 (11th Cir. 2019); *United States v. Delarosa*, 572 Fed. Appx. 737, 739 (11th Cir. 2014) (affirming the denial of acceptance of responsibility where the defendant pled on the first day of

trial since "her plea was untimely and caused the government to incur various expenses and efforts," including the inconvenience of jurors).

**D. The Section 3553(a) Factors Support a Sentence at the Middle of the Applicable Custody Guideline Range.**

In light of the totality of the circumstances, the Government intends to recommend that the Court impose a sentence in the middle of the Custody Guideline Range. Such a sentence is "sufficient, but not greater than necessary to comply with the purposes of sentencing" as articulated under the 18 U.S.C. § 3553(a).

As a preliminary matter, the Government notes that the PSR reflects that the Defendant has no criminal convictions or other characteristics that necessarily favor any particular custodial sentence. However, the nature and circumstances of the offense justify a sentence within the middle of the applicable custody guideline range. The Defendant perpetuated a massive scam involving victims both in the United States and abroad by using their excitement and interest in the fairly new and emerging world of cryptocurrency to facilitate his schemes. He not only pumped tokens, but he also pumped people's dreams, only to then dash those hopes and dreams through his theft and lies. As investor-victims testified at trial, the Defendant's promises about a streaming platform for new and emerging artists to be able to share their films and a cryptocurrency platform that encompassed profit sharing were novel and innovative. The ideas caught people's attention and made people want to be involved in the visions.

Instead of building on that enthusiasm, the Defendant stole from the very people who wanted to believe in him and trusted his visions. The Defendant's actions were not a momentary lapse of judgment or a spilt-second decision, but

involved a repeated and calculated decision to take investors funds and transfer them to his accounts and then to use such funds to buy jewelry, luxury vehicles and the $1.5 million Buckhead residence.  The Defendant stole the investors-victims excitement to satisfy his own greed.

A sentence in the middle of the applicable custody guideline, therefore, also would reflect the seriousness of the offense, promote respect for the law and provide just punishment.

Lastly, such a sentence would provide adequate deterrence—not only to the Defendant—but to the public at large, especially to those individuals who prey on the virtually unregulated world of cryptocurrency.  A middle of the guideline range sentence would demonstrate to those who seek to violate the law by making false promises involving cryptocurrency—and to those who seek to unlawfully inflate trading prices of cryptocurrency—that such conduct will result in a significant term of imprisonment.

**[CONTINUED ON NEXT PAGE]**

**Conclusion**

For all the foregoing reasons, the Government respectfully requests that the Court sentence the Defendant in the middle of the applicable Custody Guideline Range.

Respectfully submitted,

RYAN K. BUCHANAN
*United States Attorney*

/s/SEKRET T. SNEED
*Assistant United States Attorney*
Georgia Bar No. 252939
sekret.sneed@usdoj.gov

/s/NATHAN P. KITCHENS
*Assistant United States Attorney*
Georgia Bar No. 263930
nathan.kitchens@usdoj.gov

**Certificate of Service**

The United States Attorney's Office served this document today by filing it using the Court's CM/ECF system, which automatically notifies the parties and counsel of record.

> JOSHUA SABERT LOWTHER
> jlowther@lowtherwalker.com
> KATRYNA LYN SPEARMAN
> kspearman@lowtherwalker.com
> Lowther Walker LLC
> 101 Marietta St., NW, Ste. 3325
> Atlanta, Georgia 30303
> 404-496-4052

November 17, 2022

> /s/ SEKRET T. SNEED
> SEKRET T. SNEED
> *Assistant United States Attorney*