THE FOLLOWING IS THE PDF OF AN OFFICIAL TRANSCRIPT.

OFFICIAL TRANSCRIPTS MAY ONLY BE FILED IN CM/ECF BY THE OFFICIAL

COURT REPORTER AND WILL BE RESTRICTED IN CM/ECF FOR A PERIOD OF 90

DAYS.  YOU MAY CITE TO A PORTION OF THE ATTACHED TRANSCRIPT BY THE

DOCKET ENTRY NUMBER, REFERENCING PAGE AND LINE NUMBER, ONLY AFTER

THE COURT REPORTER HAS FILED THE OFFICIAL TRANSCRIPT; HOWEVER, YOU

ARE PROHIBITED FROM ATTACHING A FULL OR PARTIAL TRANSCRIPT TO ANY

DOCUMENT FILED WITH THE COURT.

1               **UNITED STATES DISTRICT COURT**
          **FOR THE NORTHERN DISTRICT OF GEORGIA**
2                  **ATLANTA DIVISION**

3

4  UNITED STATES OF AMERICA, )
                          )
5                          )
  -VS-                 ) DOCKET NO. 1:20-CR-00347-JPB
6                          )
  RYAN FELTON,          )
7                          )
        DEFENDANT.       )
8

9           **TRANSCRIPT OF SENTENCING PROCEEDINGS**
           **BEFORE THE HONORABLE J.P. BOULEE**
10           **UNITED STATES DISTRICT JUDGE**
             **NOVEMBER 22, 2022**
11

12

13

14  **APPEARANCES:**

15  **ON BEHALF OF THE GOVERNMENT:**
        SEKRET T. SNEED, ESQ.
16       NATHAN KITCHENS, ESQ.
        ASSISTANT UNITED STATES ATTORNEYS
17

18  **ON BEHALF OF THE DEFENDANT:**
        JOSHUA S. LOWTHER, ESQ.
19

20

21

22

23  **STENOGRAPHICALLY RECORDED BY:**

24              PENNY PRITTY COUDRIET, RMR, CRR
               OFFICIAL COURT REPORTER
25            UNITED STATES DISTRICT COURT
                ATLANTA, GEORGIA

1          **(PROCEEDINGS HELD IN OPEN COURT AT 1:08 P.M., ATLANTA)**

2                          **(Court Announced)**

3          COURTROOM DEPUTY CLERK:  The Court has set aside time

4   for a sentencing in the United States v. Ryan Felton, Case

5   1:20-CR-347.

6          Counsel, will you please make your appearances for the

7   record.

8          MS. SNEED:  Good afternoon, your Honor.  Assistant

9   United States Attorney Sekret Sneed.  And also with me here today

10  is Assistant United States Attorney Nathan Kitchens.  And from the

11  FBI we have Special Agent Ryskoski.  And at the back table Special

12  Agent Joe Stites and Special Agent Marissa Priestley.

13         THE COURT:  Okay.  Thank you.

14         MR. LOWTHER:  Good afternoon, your Honor.  Joshua

15  Lowther for Mr. Felton.  And Mr. Felton is at counsel table with

16  me.

17         THE COURT:  Good to see both of you as well.

18         And we have Officer Ridley.

19         OFFICER RIDLEY:  Yes.  Good afternoon, your Honor.

20         THE COURT:  Thank you for being here as well.  Good to

21  see you.

22         Mr. Felton pled guilty on July 14th of this year to

23  Counts 1 through 3, 6 through 11, 13 through 22 and 24 through 28

24  of the superseding indictment.

25         In accordance with Rule 32 of the Federal Rules of

1   Criminal Procedure the US Probation Office has conducted a

2   presentence investigation and prepared a presentence report, a

3   copy of which has been provided to both the government and the

4   defense.

5             And, Mr. Lowther, have you and your client had an

6   opportunity to read and discuss the presentence report?

7             MR. LOWTHER:  We have, your Honor.

8             THE COURT:  Do you have any questions about the

9   presentence report or any amendments now other than what's been

10  previously filed?

11            MR. LOWTHER:  Excuse me?

12            THE COURT:  Do you have any questions about the

13  presentence report or any amendments now other than what's been

14  previously filed?

15            MR. LOWTHER:  No, your Honor.

16            THE COURT:  Thank you.

17            From my review I believe we have three issues to

18  discuss.  One involves the restitution amount.  And the other two

19  involve the enhancement for characteristics of the offense and the

20  reduction for acceptance of responsibility.  Are there any other

21  issues other than those three, counsel?

22            MS. SNEED:  Not that the government is aware of, your

23  Honor.

24            MR. LOWTHER:  No, your Honor.

25            THE COURT:  I know as to restitution, although it was

1   originally pegged at or about 2.4 or 2.5 Million.  It looks like

2   the government now is seeking the lesser number of $659,476.44.

3          Is that still at issue?

4          MS. SNEED:  Your Honor, that number has actually been

5   adjusted upwards.  We did hear from three additional victims.  And

6   I spoke to Mr. Lowther before the hearing, and it appears that the

7   defendant is not contesting the restitution as to all of the

8   victims except for one.  And so the parties are just going to meet

9   and confer about that particular victim.  And we would ask that

10  the Court continue out the restitution for up to 90 days.  And

11  we're more than likely going to reach an agreement as to the

12  restitution number, and we'll file something with the Court.

13         THE COURT:  All right.  So all are in agreement, then,

14  we'll just push out the restitution discussion for a later date?

15         MR. LOWTHER:  Yes, your Honor.  Thank you.

16         THE COURT:  Very well.  That leaves us with two issues,

17  then.

18         The first one is the sophisticated means enhancement

19  under 2B1.1(b)(10)(C).  Let me hear from everybody on that issue.

20         MS. SNEED:  Yes, your Honor.

21         Your Honor, the sentencing guidelines defines the

22  sophisticated means enhancement as offense conduct that is

23  especially complex or especially intricate.  Case law in the

24  Eleventh Circuit tells us that the totality of the scheme has to

25  be sophisticated, it's not judged by each conduct.

1          The PSR and the government's sentencing memo, which I

2     assume the Court has reviewed, lays out the basis for this

3     enhancement, so I won't go into detail about what's already been

4     laid out for the Court, but I did just want to highlight a few

5     things as to why this enhancement applies here.

6          And it's not solely because this case involved

7     cryptocurrency.  Really the core of the sophisticated means

8     enhancement is everything almost else except for the

9     cryptocurrency.  It's the fact that the defendant, as laid out in

10    the PSR, made multiple misstatements to the public.  The defendant

11    took steps to trick the public by putting the white paper on the

12    Internet, the white paper for both schemes that are at issue here,

13    the FLiK scheme and the CoinSpark scheme.  The defendant made

14    numerous lies to investors in order to trick them into investing

15    in his cryptocurrency schemes.  The defendant even went so far as

16    to hatch this idea of creating a dividend for the cryptocurrency

17    platform in the CoinSpark scheme.

18         It was the defendant's specialized knowledge and skill

19    that led him to be able to defraud people into investing into the

20    FLiK scheme, which, as the Court may remember, was that sort of

21    NetFlix-type idea, and the CoinSpark scheme, which was the

22    cryptocurrency platform.

23         And if the Court recalls from the trial testimony, the

24    dividend -- the potential dividend from the CoinSpark or

25    cryptocurrency platform scheme was particularly important to

1  people.  So the defendant had to have specialized knowledge as to

2  what a dividend would mean to people, what it would mean to the

3  market, what it would mean in terms of the cryptocurrency world.

4       And the defendant also -- yes, cryptocurrency is a part

5  of this case and it is important here.  As the Court is aware,

6  yes, many people have heard of cryptocurrency as the jury said

7  during voir dire, but the defendant had a particular knowledge and

8  skill that he was able to use to trick people into investing into

9  his schemes.  And also to hide the proceeds from that scheme.

10 Only because the defendant knew how to create these accounts in

11 order to get the proceeds to a place where he could then transfer

12 it to his traditional bank account at Wells Fargo, that all

13 required specialized knowledge.  And as the Court heard at trial,

14 cryptocurrency is anonymous.  That's the whole point of it.

15      So for all those reasons, because of the especially

16 complex and intricate parts of the whole scheme, not just one

17 particular act, the government contends that the sophisticated

18 means enhancement applies.

19      THE COURT:  All right.  Thank you.

20      MR. LOWTHER:  Your Honor, as Ms. Sneed stated, 2B1.1,

21 application note (9)(b) defines sophisticated means as especially

22 complex or especially intricate offense conduct pertaining to the

23 execution or concealment of the offense.  And this in the last ten

24 years, as the Court well knows, has become almost an ubiquitous

25 enhancement.

1           So I believe the analysis should look at the specific

2    conduct of the offense and not conduct in general.  So what I mean

3    is a cryptocurrency scheme is necessarily more complex than, for

4    example, inflating your income on an application for a loan or to

5    get a credit card by e-mail.  So you shouldn't look -- you

6    shouldn't consider this enhancement in the context of this is a

7    cryptocurrency scheme.  And I understand the government says it's

8    not based on that but really it is.  That's what all these charges

9    are about.

10           And there was no conduct in this case -- and, of course,

11   the Court had the benefit of a few days of a trial here, so this

12   isn't just, you know, a stipulation of facts where you're reading

13   this in the presentence report.  You actually heard evidence in

14   this case.  And there was no conduct by Mr. Felton that was not

15   actually necessary to commit this offense.

16           If you look at the presentence report in support -- for

17   example, the probation officer's assertion in support of the

18   enhancement, false statements concerning how proceeds of

19   investments would be used, the amount of funds needed, false

20   statements to investors, false statements to induce individuals to

21   invest, the government even says in its sentencing memorandum, and

22   it reiterated today, it was also based on Mr. Felton's specialized

23   knowledge of cryptocurrency or his ability to understand

24   essentially that realm.  But when you consider the conduct as

25   alleged and you consider the conduct that was shown by the

```
1   evidence, the testimony of the government's witnesses, he didn't
2   do anything that wasn't necessary to actually commit this offense.
3           The main issue here, obviously, or the main issue at
4   trial was, until he pled guilty, his specific intent to fraud.
5   And all of the conduct that both the probation officer and the
6   government is alleging that rises to the level of especially
7   complex or especially intricate really isn't any more than what he
8   needed to do to commit the offense.
9           So when you consider that conduct in the scope of
10  exactly what the charges or the offenses are -- I know there are
11  multiple counts -- versus, for lack of a better way to describe
12  it, a garden variety fraud case, wire fraud, mail fraud securities
13  fraud, any kind of fraud, it simply doesn't rise to the level of
14  especially complex or especially intricate.
15          THE COURT:  Thank you.
16          All right.  I believe the sophisticated means
17  enhancement is appropriate here.  The language we look at under
18  2B1.1(b)(10)(C) is the offense otherwise involves sophisticated
19  means, and the defendant intentionally engaged in or caused the
20  conduct constituting sophisticated means.  And if we look at note
21  (9)(B) as to how sophisticated means is defined, it means an
22  especially complex or especially intricate offense conduct
23  pertaining to the execution or concealment of the offense.  I
24  believe the government has shown that in spades in this case.
25          This case involved false statements to investors,
```

1  prospective investors, involving both the FLiK token and Spark

2  coin in order to pump the price of the assets so that the

3  defendant could then in turn dump his own tokens at an inflated

4  price.  And I believe this applies when I look at the totality of

5  the scheme, that it was sophisticated under the *Barrington* case,

6  648 F.3d 1178 at 1199.

7          And if we look at the two schemes here -- first off as

8  to the FLiK scheme, I think it's been shown that the defendant did

9  use extensive knowledge of trading these digital assets on the

10  cryptocurrency platforms, holding those FLiK tokens himself.  He

11  made false statements regarding the platform itself.  His

12  intention to burn unsold tokens so that those would not be sold or

13  used.  His participation involving notable entertainers to help

14  him with that scheme.  He noted that there were purportedly large

15  dollar investors that there were not.  And then after all this he

16  then sold his tokens under an anonymous account in the

17  cryptocurrency platform.  The scheme involved several accounts,

18  both trading accounts, bank accounts, to facilitate that

19  concealment.

20          As to the CoinSpark team, it involved other individuals

21  in helping to run the scheme.  The defendant actively hid his own

22  involvement, going so far as to deny his involvement in it.  He

23  took advantage of his own sophisticated knowledge regarding the

24  creation of companies including outside of the United States in

25  lucrative foreign markets.

1          So, in sum, I do believe it was both complex and

2  intricate.  And I think this is consistent with the findings of

3  *Altomare* case and the *Muzio* case, 673 F.App'x 956, and the second

4  one is a number 920327.

5          Let's move onto the next issue, which is whether or not

6  there should be a reduction for acceptance of responsibility.

7          MS. SNEED:  Your Honor, it is the defendant's burden to

8  prove that, but I will go first if that's what the Court would

9  like.

10          THE COURT:  No, that's fine.  I'm happy to hear from

11  Mr. Lowther first.

12          MR. LOWTHER:  Guideline Section 3E1.1 does set some

13  parameters in its general language.  If the defendant clearly

14  demonstrates acceptance of responsibility for his offense,

15  decrease by two levels.  If permitting the government to avoid

16  preparation for trial or preparing for trial, decrease by one

17  additional level.

18          Application Note 2, it's not intended to apply to a

19  defendant who puts the government to its burden of proof at trial

20  by denying essential factual elements of guilt, is convicted and

21  only then admits guilt and expresses remorse.

22          So certainly Mr. Felton is not entitled to -- the

23  government has no obligation, nor should it move for a third level

24  for acceptance.  Obviously we're not in that situation.  But even

25  though we were a few days into trial, Mr. Felton did plead guilty.

 1  Not only did he plead guilty, he actually accepted responsibility
 2  for his conduct.  He stood here, you heard his allocution.  He
 3  didn't minimize his conduct or in any other way try to mitigate
 4  what it was.
 5          This is a little difficult -- this is a little difficult
 6  because it's so factually specific, and that's why I said that the
 7  guideline itself just set some parameters.  So the first line
 8  there is "if the defendant clearly demonstrates acceptance of
 9  responsibility for his offense."  It doesn't say when he does it.
10  It just says "if he clearly demonstrates acceptance of
11  responsibility."  And Mr. Felton has done that in the case.
12          The other side is, again, allowing the government time
13  to avoid preparing for trial and to better allocate the resources
14  of the court.  We're certainly not at that extreme either.  So the
15  question becomes should or is this downward adjustment appropriate
16  based on the timing of his plea.  When I say it's difficult, for
17  every one case that you find that it's appropriate, you find five
18  cases that says it's not and vice versa.  So it is just such a
19  factually-specific finding that the Court has to just look at
20  these particular facts and at this particular timing.
21          And he did not wait until a jury found him guilty.  He
22  pled guilty.  It wasn't the government's -- it wasn't even the
23  government making an offer.  At some point in trial he approached
24  the government, through me, of course, we would like to plead
25  guilty.  We notified the Court.  There wasn't a plea agreement.

1  There wasn't any incentive for him to plead guilty other than to

2  actually admit his conduct and avoid this verdict.  And, again, he

3  did that.  He didn't present any witnesses.  He didn't perjure

4  himself at trial.  And I'm not suggesting that he would have done

5  that, but he didn't do anything outside of -- or he didn't -- his

6  conduct certainly wasn't such that would take it outside of what

7  part A of 3E1.1 considers.

8          I'm sure the government would have preferred not to try

9  the case.  I understand that.  And I'm sure Ms. Sneed will tell

10 you -- or the government will explain what its position is.  But I

11 don't think the Court has to look any further than the fact that,

12 again, without some incentive such as a plea agreement where the

13 government agreed to limit the criminal exposure, et cetera, you

14 know, charge bargaining, some guideline concession, et cetera, he

15 simply pled guilty.  And in this particular case the Court should

16 reduce the guideline range by two levels.

17         Candidly he deserves some credit for actually having

18 done that.  He could have had the government put on the rest of

19 its case.  He could have put on a one-, two-, three-, four-day --

20 I'm not saying this would have happened in this particular case

21 because we estimated a much shorter time, but he could have done

22 all that and made the jury find him guilty, and he would be in the

23 same position then as he's in now.

24         So while we -- I don't want to use the word "entitled,"

25 he's not entitled to anything because the Court does have

```
 1  discretion.  There should be some recognition respectfully that he

 2  pled guilty, did not require the government to go through the

 3  entire trial, did not take that time as opposed to actually having

 4  done that where, again, his guideline -- recommended guideline

 5  range would be the same.

 6            THE COURT:  All right.  Thank you.

 7            Ms. Sneed.

 8            MS. SNEED:  The Eleventh Circuit has held that the

 9  defendant must do more than just prove that he pled guilty in

10  order for him to get an acceptance of responsibility decrease.

11  Particularly in a situation like this where we did go to trial,

12  there were three days of trial.  And in the application notes,

13  application number 1, application note 1, in terms of

14  considerations that the Court can look at timeliness, which is

15  application note 1(a)(H), is listed.  And the Eleventh Circuit has

16  noted that timing is an appropriate consideration for the Court to

17  look at.

18            And the reason timing is so important when it comes to

19  acceptance of responsibility is exactly what this case

20  demonstrated.  This wasn't just a simple trial with a couple

21  witnesses that drove up the road.  As the Court may recall, we had

22  numerous international witnesses.  Numerous may be exaggerating,

23  but we had at least three or four international witnesses,

24  victims, who had to travel all the way here to America to testify

25  in this trial.  And I will let the Court know that that was more
```

1   than an ocean to get international victims to come to the United

2   States under subpoena from the United States.  We had to involve

3   other components within the Department of Justice for that to

4   happen.  The United States can't just go knock on the door of

5   someone in the Netherlands and say, Come to testify in our trial.

6   It involves a whole process.

7          Not only that, the government called an expert witness.

8   The government had to pay that expert witness.  And if the Court

9   recalls, she -- Beth Bisbee, she came and testified for I believe

10  a couple of hours.  And she also had to prepare to testify.  And

11  this was -- it involved cryptocurrency, of course, as we said

12  several times, but our expert is an expert in that field.  And in

13  order to get her to be able to break that down to a level that all

14  of us could understand who are not experts in the field, that also

15  took a lot of time.

16         And then, of course, one of the cases that I believe

17  that I cited in the sentencing memo mentioned the inconvenience of

18  the jurors.  The jurors had to come to this courtroom three days

19  at the very least.  Actually it was the fourth day, they were here

20  when the defendant pled guilty that morning.

21         So, your Honor, I think that all of that should go

22  towards the Court's consideration of not giving the defendant this

23  two-level increase.  And I'll also just note that I believe the

24  sentencing guideline or maybe it was an Eleventh Circuit case said

25  that it is not a right for the defendant to get this decrease.

1  The defendant must actually show acceptance of responsibility.

2  And the government contends that the defendant has not met its

3  burden here and the decrease should not apply.

4          THE COURT:  All right.  Thank you.

5          Anything else from the defense?

6          MR. LOWTHER:  No, your Honor.

7          THE COURT:  All right.

8          I do not believe that the defendant's met his burden of

9  demonstrating acceptance of responsibility.  Certainly he did

10  eventually enter a plea on the third day of trial here.  But as I

11  look under 3E1.1(a) and the application note, there's various

12  considerations.

13          He truthfully admitted that he did that belatedly, but

14  the timeliness, that's under (a) and then under (H), I think the

15  timeliness is important here.  As Ms. Sneed just noted, this was a

16  complex trial and getting the witnesses here was not easy.  There

17  were multiple international witnesses as well as an expert

18  witness.

19          As I look at the other factors, (B) through (G) under

20  application note 1, whether he voluntarily terminated or withdrew

21  from the conduct, whether he voluntarily paid restitution, whether

22  he voluntarily surrendered, whether he voluntarily assisted the

23  authorities, whether he voluntarily resigned, any post-offense

24  rehabilitation efforts, I have not seen anything from that argued

25  by the defense.  So I think in sum this is not a situation where

1  he has clearly demonstrated his acceptance of responsibility.

2         I would note that normally under application note 2,

3  when somebody puts the government to the burden of proof at trial

4  is not entitled to this.  However, it's important that the

5  Constitution right to a trial doesn't preclude getting acceptance

6  of responsibility.  There are situations in which you can put the

7  government to the burden and still get the benefit of this.  But I

8  think based on the considerations here under note 1 he's not

9  entitled to it.

10         I'll, therefore, adopt the findings of fact and

11  conclusions of law in the presentence report to which no objection

12  has been made.  And as to these two where there were objections,

13  again I'm finding the sophisticated means enhancement should apply

14  and that the acceptance of responsibility reduction should not

15  apply.

16         Based on these findings of fact and conclusions of law

17  the guideline calculations are as follows:

18         Base offense level of 7;

19         Adjusted offense level of 28;

20         A total offense level of 28;

21         Criminal History Category of I;

22         Recommended sentencing range of 78 to 97 months;

23         Fine guideline range of 25,000 to $4,998,797.22;

24         Term of supervised release of 1 to 3 years;

25         And a special assessment of $2,400.

1          Any objection to the guideline calculation as stated by

2    the Court other than what's been previously stated?

3          MS. SNEED:  Not from the government.

4          MR. LOWTHER:  Not other than previously stated.

5          THE COURT:  Very well.

6          I'll now hear from the parties as to recommendations for

7    a reasonable sentence concerning 18 USC, Section 3553(a) factors.

8    I have reviewed the presentence report and the government's

9    sentencing memorandum.

10         Are there any other documents or letters for the Court

11   at this time?

12         MS. SNEED:  Not from the government.

13         MR. LOWTHER:  No, your Honor.

14         THE COURT:  Are there any victims present that wish to

15   speak or present evidence in connection with the sentence in this

16   case?

17         MS. SNEED:  No, your Honor.

18         THE COURT:  Any witnesses on behalf of the defendant

19   other than perhaps himself?

20         MR. LOWTHER:  No, your Honor.

21         THE COURT:  Mr. Lowther, if you would like to make an

22   argument on behalf of your client, I would be happy to hear from

23   you, sir.

24         MR. LOWTHER:  Thank you, your Honor.

25         Despite my disagreement with the probation officer on

1   only two points on the presentence report, I believe it is very

2   thorough, and it covers everything that the Court needs to be

3   aware of to impose sentence in this case.

4            I would like to underscore just a few points.  Again,

5   Mr. Felton is now going through a divorce.  That was born of this

6   case.  And, of course, he's pled guilty to what he's done and that

7   was his own doing.  But, nonetheless, that is something he's

8   suffering right now.

9            He and his soon-to-be former spouse do have a

10  five-year-old child, as the Court's aware, who was diagnosed with

11  autism.  And I think -- just from my knowledge I think Mr. and

12  Mrs. Felton are doing the very best they can do under the

13  circumstances to support him, but obviously the child needs both

14  parents.  And we're not so naive as to think the Court is not

15  going to impose a term of imprisonment in this case, but the

16  sooner Mr. Felton can be back with his son obviously the better.

17           And, of course, we're not deflecting what an appropriate

18  sentence would be in this case saying, Oh, we just had this issue.

19  But when you look at Mr. Felton, which obviously you have to do

20  under these factors under 3553(a), you look at his particular

21  circumstances.  And these are circumstances that he's enduring

22  even though they are of his own making, that the average person

23  without those circumstances would not have to endure in this case.

24  And, candidly, I don't think a lengthier term of imprisonment --

25  given those circumstances and given his understanding that he

1  needs to be back to support his son, I don't think a lengthier

2  term of imprisonment is necessary for him to understand that the

3  conduct was wrong and for him not to repeat the conduct again,

4  which is one of the factors, two arguably, of what the Court

5  should consider when imposing the sentence.

6          I would like to bring the Court's attention to the

7  mental health issue in paragraph 179 -- excuse me, the family

8  history issue in paragraph 179.  I think that's certainly relevant

9  to this.  And the mental health issue in paragraph 186.  That was

10 a latent diagnosis after trial as a matter of fact.  So how that

11 could have or would have played into this case, candidly it wasn't

12 known to Mr. Felton and, therefore, it wasn't brought to my

13 attention in time to even determine that.  But, nonetheless, I

14 think it's appropriate for the Court to consider what that is.

15         So given those facts and given those circumstances and

16 based on the argument, even though I understand the Court's ruling

17 regarding acceptance of responsibility and its application of the

18 guidelines, the Court can still consider his acceptance of

19 responsibility under 3553(a), specifically under just punishment.

20 So, again, the question becomes without -- at the risk of

21 oversimplifying this, how much time does Mr. Felton need to serve

22 in prison to realize that his conduct was wrong, to realize that

23 he should not repeat his conduct, and, of course, to let the

24 public know the seriousness of the offense?  Don't do this,

25 deterrence.  If you do this, you will face a penalty.  And based

1   on the circumstance of -- Mr. Felton's particular circumstances

2   we're asking the Court to impose a sentence not to exceed

3   46 months.

4           The difference in 46 months and a sentence within the

5   advisory guidelines, it wouldn't make the difference under the

6   specific factors in 3553(a) as I just stated.  And, of course,

7   a sentence not to exceed 46 months would certainly be --

8   certainly -- if not greater than necessary -- sufficient if not

9   greater than necessary to comply with what the Court is supposed

10  to consider under 3553(a)(2).

11          At the appropriate time I would like to be heard

12  regarding a recommended designation and a release pending

13  execution of sentence.

14          THE COURT:  All right.  I would be happy to hear from

15  you about both of those now.

16          MR. LOWTHER:  We would respectfully ask the Court to

17  recommend FPS Montgomery, Alabama.  Based on my understanding that

18  would be the facility of the appropriate security classification

19  closest to his permanent residence.  And, of course, the purpose

20  for that recommendation or the purpose for our asking for that

21  recommendation is so that he would be able to see his family

22  without any undue hardship if he's in a greater place.

23          Regarding release pending execution of sentence, the

24  Court obviously has discretion as in everything else, but 3143

25  states that after a conviction -- and the burden is the same

```
 1  pending execution of sentence as it is pending sentencing.  So if

 2  the defendant demonstrates by clear and convincing evidence that

 3  he's not a risk of flight and he's not a danger to the community

 4  or any other person in the community, then the Court shall allow

 5  him to remain on release at this point pending execution of

 6  sentence.

 7            So the Court necessarily made that finding after

 8  Mr. Felton's plea of guilty because obviously he's on pretrial

 9  release now.  The burden hasn't shifted, so I respectfully suggest

10  that the analysis now should be what has happened since his

11  release pending sentencing --

12            THE COURT:  Let me interrupt you and ask Ms. Sneed, do

13  you object to him turning himself in at a later date, perhaps

14  after the 1st of the year?

15            MS. SNEED:  The government does not object.

16            THE COURT:  How long were you thinking, Mr. Lowther?  I

17  know he's got, you know, a five-year-old son with autism or

18  Asperger's.

19            MR. LOWTHER:  We respectfully ask for 90 days.

20            THE COURT:  I think that's fine.  Ms. Sneed, any

21  objection to 90 days?

22            MS. SNEED:  No objection, your Honor.

23            THE COURT:  And I'll also recommend FPC Montgomery.

24            One other question on this is I note the diagnosis that

25  he's had referenced in 186.  Are there any requests that I
```

 1  recommend he be placed somewhere with mental health counseling?

 2          MR. LOWTHER:  No, your Honor.

 3          THE COURT:  Okay.  Very well.  All right.  Thank you.

 4          Mr. Felton, I've had the benefit of hearing from your

 5  counsel, but if there's anything you would like to say personally

 6  before I sentence you, I would be happy to hear from you now, sir.

 7          THE DEFENDANT:  Your Honor, over the last few months

 8  I've had time to ruminate over everything that's transpired.  And

 9  I take full responsibility for my actions and my behavior.  I'm

10  embarrassed by it.  I'm ashamed by it.  I wish it had never

11  happened.  And I apologize to everyone that I affected.  I

12  apologize to the government.  I apologize to this court.

13          You may impose your sentence when ready.

14          THE COURT:  Okay.  Thank you.  And, sir, my condolences.

15  I see while all this was going on you lost your father, who I

16  understand was of your two parents the one that was most important

17  to you growing up, so my condolences on that.

18          THE DEFENDANT:  Thank you.

19          THE COURT:  Ms. Sneed.

20          MS. SNEED:  Thank you, your Honor.  And once more, our

21  argument is laid out in our sentencing memo, but I do want to

22  highlight a couple of things.

23          First, I would like to note that the defendant's ideas,

24  these two schemes, the FLiK and the CoinSpark, were actually, I

25  think, really good ideas.  The FLiK, it was supposed to be this

1  Netflix type of situation that emerging and independent artists

2  could get their projects funded and developed.  And then there was

3  this cryptocurrency platform where you get a dividend.

4          The problem came when the defendant got the money from

5  investors and did nothing to execute these schemes.  These two --

6  not schemes but these two ideas.  He sold this bill of goods to

7  investors and prospective investors, who I think we heard

8  testimony all thought they were great ideas like I did and wanted

9  to see something like this.

10         And then instead of trying to actually make these ideas

11  come to life, he used that money for his own lifestyle.  And the

12  things that he bought, I think, were particularly egregious.  He

13  paid $1.5 Million for this all cash -- in all cash for a house in

14  Buckhead that now, according to the PSR, is worth 1.6 Million.  He

15  bought these cars.  He bought jewelry.  All that sort of stuff.

16  It just really goes to the nature and circumstances of this

17  offense and why it is particularly egregious.  It just shows a

18  level of greed.

19         The defendant through his previous profession and

20  business and the film industry, it seemed like he had the ability

21  to make money and to have a comfortable lifestyle, but instead he

22  chose the easy way out.  For that reason, just to put it up front,

23  as I noted in our sentencing memo the government is asking for a

24  sentence within the guidelines and in the middle of the range of

25  the guidelines.

1          The other thing I wanted to point out for the Court in

2   terms of the nature and circumstances of the offense is that the

3   defendant used his actual friends to help him carry out this

4   thing.  If the Court recalls, it heard from Chance White, Owen

5   Smith and also Will Sparks who all seemed to consider the

6   defendant a friend.  In fact, I remember I believe it was

7   Mr. White, he couldn't even look at the defendant.  He just seemed

8   really emotionally disturbed by the fact that he had to be here.

9          But it wasn't just the fact that the defendant used his

10  friends in order to execute these schemes.  He didn't give them

11  any money for all the work that they did to help him do it.  He

12  kept every single penny.  And not saying that it would have been

13  better if he had shared fraud proceeds, but the fact that he knew

14  that all of this was a fraud and he used his friends and then

15  didn't even give them any of the proceeds of it, it just also

16  seems particularly egregious to me.

17         I'll note that the history and characteristics of the

18  defendant don't necessarily weigh one way or the other.  The

19  defendant has no real criminal history, at least no felony

20  convictions.  But the government does believe that a sentence at

21  the middle of the guidelines would reflect the seriousness of this

22  offense.

23         It's a very serious offense to defraud the public into

24  trying to support something that seemed sort of innovative and

25  interesting when it was never going to happen.  And then to

1  repeatedly lie to the public about the fact that it was being
2  developed, it was being built as the Court may recall hearing from
3  the testimony at trial.

4       Middle of the guideline sentence would also promote
5  respect for the law.  And it would be a just punishment.  And it
6  also would be needed to deter not just the defendant -- and
7  because this scheme went on for so long, there may be an issue of
8  deterrence for the defendant but also for the general deterrence,
9  for the public to know.  Cryptocurrency is in the news a lot.  And
10 a lot of times it's about something negative happening with
11 cryptocurrency.  And so there needs to be a message that this is
12 something that the government will prosecute when it's done
13 unlawfully, and the people who perpetuate these schemes need to
14 realize this is not a game to trick people into giving you money
15 so that that person can use those funds for their own gain.

16      And also I will note that this middle of the guideline
17 range sentence recommendation by the government takes into account
18 that the defendant has completely agreed to forfeiture and it's a
19 significant amount of forfeiture.  He's agreed to the forfeiture
20 of his house.  The Court -- the government filed the consent
21 preliminary order of forfeiture, which I also have here if the
22 judge needs another copy.  But he also had his wife -- or maybe
23 she did on her own, but she also signed over her interest to the
24 house.  So that just streamlines that forfeiture process.  And I
25 believe there will be an agreement as to restitution.  So that is

1  why the government is recommending that middle of the guideline

2  range sentence.

3  So unless the Court has any other questions, that's the

4  government's recommendation.

5  THE COURT:  You know what, I printed out the consent

6  preliminary order of forfeiture, but I'm trying to save the paper

7  so I printed it out on -- four pages on one sheet, so I can't

8  really sign this version.  If you have a copy you can give

9  Ms. Lee, that will be helpful.

10  MS. SNEED:  I do, your Honor.

11  THE COURT:  Okay.  Thank you.

12  Any other matter that the Court needs to take up or

13  anything else from either side before I issue a sentence in this

14  case, counsel?

15  MR. LOWTHER:  No, your Honor.

16  MS. SNEED:  Not from the government.

17  THE COURT:  All right.  I've signed the consent

18  preliminary order of forfeiture.  I want to take a short break and

19  think about a few things I've heard.  So give me let's call it

20  maybe ten minutes or so, might be a little longer than that.

21  Thanks, everyone.

22  (After a recess, the proceedings continued as follows:)

23  THE COURT:  Mr. Felton, if you can please stand, sir.

24  Pursuant to the Sentencing Reform Act of 1984 it's the

25  judgment of the Court that you, Ryan Felton, are hereby committed

1  to the custody of the Federal Bureau of Prisons to be imprisoned

2  for a term of 70 months custody as to Counts 1 through 3, 6

3  through 11, 13 through 22 and 25 through 28 to be served

4  concurrently.

5         Sir, you can be seated while I read the rest of your

6  sentence to you.

7         You must pay to the United States a special assessment

8  of $2,400 due immediately.  The assessment should be paid to the

9  Clerk of the US District Court, Northern District of Georgia.  The

10 Court finds that you do not have the ability to pay a fine and

11 cost of incarceration.  The Court will, therefore, waive the fine

12 and cost of incarceration in this case.

13        A determination of restitution will follow as previously

14 discussed at this hearing.

15        As to the financial penalties, you must pay those in

16 accordance with the schedule of payment sheet on the judgment.

17        Payment of criminal monetary penalties are due during

18 the term of imprisonment.  All criminal monetary penalties except

19 those made through the Federal Bureau of Prisons Inmate Financial

20 Responsibility Program are to be made payable to The Clerk,

21 US District Court, 2211 US Courthouse, 75 Ted Turner Drive,

22 Southwest, Atlanta, Georgia 30303.  Any balance that remains

23 unpaid at the commencement of the term of supervision shall

24 commence within 60 days after release from imprisonment on the

25 following terms:

1          Payable at a rate of no less than $250 a month to the
2  US District Court.
3          You must notify the Court of any changes in economic
4  circumstances that might affect the ability to pay this financial
5  penalty.
6          The Court determines that you do not have the ability to
7  pay interest and it's ordered that the interest requirement is
8  waived for restitution.
9          Upon release from imprisonment, you'll be on supervised
10  release for a term of three years as to each of the mentioned
11  counts to be served concurrently.
12          You must comply with the mandatory conditions of
13  release.
14          You must not commit another federal, state or local
15  crime.
16          You must not unlawfully possess a controlled substance.
17          You must refrain from any unlawful use of a controlled
18  substance.
19          You must submit to one drug test within 15 days of
20  release from imprisonment and at least two periodic drug tests
21  thereafter as determined by the Court.
22          You must cooperate in the collection of DNA as directed
23  by the probation officer.
24          You must make restitution in accordance with 18 USC,
25  Sections 3663 and 3663(a) or any other statute authorizing a

1   sentence of restitution.

2           As part of your supervision you must comply with the

3   standard conditions of supervision.  These conditions are imposed

4   because they establish basic expectations for your behavior while

5   on supervision and identify the minimum tools needed by probation

6   officers to keep informed, report to the Court and bring about

7   improvements in your conduct and condition.

8           The standard conditions of supervision will be included

9   in the judgment.

10          You must comply with the following special conditions

11  during the term of supervised release:

12          You must make full and complete disclosure of your

13  finances and submit to an audit of your financial documents at the

14  request of your probation officer.

15          You must provide the probation officer with full and

16  complete access to any requested financial information and

17  authorize the release of any financial information.  The probation

18  office may share the financial information with the US Attorney's

19  Office.

20          You must not incur new credit charges or open additional

21  lines of credit without the approval of the probation officer.

22          You must submit your person, property, house, residence,

23  vehicle, papers and computers, other electronic communications or

24  data storage devices or media or office to a search conducted by a

25  US Probation Officer.  Failure to submit to a search may be

1  grounds for revocation of release.

2          You must warn any other occupants that the premises may

3  be subject to searches pursuant to this condition.  An officer may

4  conduct a search pursuant to this condition only when reasonable

5  suspicion exists that you violated a condition of your supervision

6  and areas to be searched contain evidence of this violation.

7          Any search must be conducted at a reasonable time and in

8  a reasonable manner.

9          You must permit confiscation and/or disposal of any

10  material considered to be contraband or any other item which may

11  be deemed to have evidentiary value of violations of supervision.

12          The defendant is to report for service of the sentence

13  no earlier than 90 days from today.  Release conditions previously

14  established will continue to apply.  Failure to report for service

15  of sentence is a criminal offense.

16          Although the Court does not have the authority to select

17  the detention facility, it can recommend one.  And it respectfully

18  recommends to the Bureau of Prisons that the defendant be housed

19  at FPC Montgomery, Alabama.

20          This sentence is made in view of the sentencing goals

21  delineated in 18 USC, Section 3553(a) and the parties' arguments

22  as to those factors, including:

23          The nature and circumstances of the offense and the

24  history and characteristics of the defendant;

25          The need for the sentence imposed to reflect the

1   seriousness of the offense;

2          To afford adequate deterrence and to protect the public;

3          The kinds of sentences available;

4          The kinds of sentence in the sentencing range

5   established for the applicable category of offense committed as

6   set forth in the sentencing guidelines;

7          Any pertinent policy statement;

8          The need to avoid sentencing disparity;

9          And the need to provide restitution to victims.

10          This sentence meets the criteria of punishment,

11   deterrence and incapacitation and is sufficient but not greater

12   than necessary to comply with the directives of Section 3553(a).

13          Based on these considerations, I find that this is a

14   just and appropriate sentence.

15          I elected to vary downward one level from 78 to 97 to 70

16   to 87.  The defense had asked me to vary downwards five levels,

17   which I did not think was appropriate.  And the government asked

18   me to sentence within the guideline range.

19          The nature and circumstances of the offense are, of

20   course, incredibly important here.  This was a very complex scheme

21   to defraud investors in two different ways, two separate schemes.

22   And I can't ignore the gravity of the offense here.

23          And as Ms. Sneed noted, what the defendant did with the

24   proceeds, buying a Ferrari, buying jewelry, it's almost something

25   you would see in a Hollywood movie and not in real life, but it is

1    real life and the defendant really did that.

2         But when I look at this defendant, I think there is some

3    good here as Mr. Lowther has shown.  He has consented to the

4    forfeiture of the house I think most importantly.  And albeit

5    belatedly, he did eventually decide to accept responsibility.  And

6    I will say that his statement that he made in court today was

7    persuasive to the Court.  I believe that he is indeed remorseful

8    and not just acting.

9         We didn't talk about it a lot in the arguments, but, you

10   know, what I do day in, day out it seems like is sentence people

11   who have been dealing drugs, some of whom grew up in the poorest

12   neighbors in Atlanta and joined a gang when they were 12 years old

13   and those type of childhood situations.  And that's not exactly

14   what we had here.  But I think that Mr. Felton's history and

15   characteristics are important in coming up with this sentence.

16        He was physically and emotionally abused as a child,

17   including locked in a closet.  And I note that he made a statement

18   to the probation officer that he was a difficult child.  We now

19   know that he, like his son, suffered from undiagnosed Asperger's

20   as well.  And the fact that he has a five-year-old son with

21   Asperger's that needs him is also something that factored into

22   this sentence.  But having a son that needs him isn't a reason in

23   and of itself to just vary downwards.  There's a lot more to it

24   than that as discussed.

25        I think that avoiding disparity is important here, so I

1   was not inclined to vary downward more than one level.  I think

2   deterrence is important.  Given what I think is genuine remorse

3   perhaps specific deterrence not so much but general deterrence is

4   important, whether it's this type of fraud involving

5   cryptocurrencies or something not as modern as this, I think that

6   society and others who might want to engage in this type of fraud

7   know that it will be punished not just with a slap on the wrist.

8          And I do, again, commend him for his willingness to

9   consent to the forfeiture.  And I'm hopeful that the victims will

10  receive some restitution.

11         And I will say, Mr. Felton, it does seem like with your

12  life when it rains, it pours.  I understand you've got a divorce

13  proceeding that you're engaged in.  I'm sentencing you to a

14  significant jail sentence.  And, again, you have my condolences

15  about the loss of your father.

16         The record should also reflect this sentence would have

17  been the same irrespective of my ruling on the disputed guideline

18  issues that were resolved in favor of the government.  In other

19  words, I would have sentenced the defendant to the same term of

20  incarceration even if I had not ruled in the government's favor on

21  those issues.

22         I have previously signed the forfeiture order as

23  discussed.

24         Before I advise the defendant of his appeal rights, does

25  the government or defense have any further objections to the

1  findings of the Court, the guideline calculations or the sentence

2  or the manner in which it's been pronounced?

3      MS. SNEED:  Not from the government, your Honor.

4      MR. LOWTHER:  None other than already presented.

5      THE COURT:  Very well.

6      Mr. Felton, you can appeal your conviction if you

7  believe that your guilty plea was somehow unlawful or involuntary

8  or if there's some other fundamental defect in the proceedings

9  that was not waived by your guilty plea.

10      You also have the statutory right to appeal your

11  sentence under certain circumstances, particularly if you think

12  the sentence is contrary to law.

13      Any notice of appeal must be filed within 14 days of

14  judgment being entered in your case.  If you're unable to pay for

15  the cost of your appeal, you may apply for leave to appeal in

16  forma pauperis, or without payment of fees.  If you so request,

17  the Clerk of Court will prepare and file a notice of appeal on

18  your behalf.  On appeal you may also apply for court-appointed

19  counsel.

20      If you have any further questions about your right to

21  appeal, I'm sure that Mr. Lowther would be happy to advise you

22  further on this matter.

23      Mr. Felton, do you have any questions about anything

24  that I've said at today's sentencing hearing, sir?

25      THE DEFENDANT:  No, I do not.

1           THE COURT:  Counsel, is there anything else that we need

2  to discuss?

3           MS. SNEED:  Not from the government, your Honor.

4           MR. LOWTHER:  No, your Honor.

5           THE COURT:  All right.  Good to see all of you.

6           Ms. Lee, thank you.

7           Ms. Coudriet, thank you.

8           And to our court security officer, I appreciate your

9  help as well.

10          Mr. Felton, again, best of luck to you, sir.

11          All right.  That concludes this proceeding.  Thanks,

12  everyone.

13          (PROCEEDINGS REPORTED WERE CONCLUDED AT 2:11 P.M.)

14                    _____

15

16

17

18

19

20

21

22

23

24

25

```
1                        C E R T I F I C A T E

2

3    UNITED STATES DISTRICT COURT

4    NORTHERN DISTRICT OF GEORGIA

5

6        I do hereby certify that the foregoing pages are a true and

7    correct transcript of the proceedings taken down by me in the case

8    aforesaid.

9        This the 25th day of January, 2023.

10

11

12

13

14        _____

15                     PENNY PRITTY COUDRIET, RMR, CRR
                       OFFICIAL COURT REPORTER
16

17

18

19

20

21

22

23

24

25
```